UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| TOMMY LEE HOUSER, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No.:   3:20-CV-132-TAV-DCP |
| SHAWN PHILLIPS, | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

On January 20, 2015, when Petitioner visited the car lot at Manis Motors, Robert Williams, the sales manager of Manis Motors, spoke with Petitioner about a teal Ford Ranger truck that was for sale.  *State v. Houser*, No. E2017-00987-CCA-R3-CD, 2017 WL 5054074, at *1 (Tenn. Crim. App. Nov. 1, 2017), *perm. app. denied* (Tenn. Feb. 14, 2018). Petitioner stated that he "was waiting for some sort of 'backpay'" before buying, and Mr. Williams told him that if the truck was still here when he was ready, he could buy it. *Id.*

That night, Mr. Williams learned that the same teal truck had been taken from the business and "[t]he gates around the car lot had been knocked down." *Id.* The truck was later located and returned to Manis Motors, but it was damaged. *Id.* Mr. Williams estimated that the truck was valued at $1,600 to $1,800 and the repairs to the gates cost $1,400 to $1,600. *Id.*

On that same night of January 20, 2015, Michael Cooper, a Knoxville Police Department ("KPD") officer, responded to a call reporting a hit and run at Manis Motors.

*Id.* When he arrived at Manis Motors, he observed damage to the fence caused by a vehicle pushing it down to leave the lot. *Id.* Officer Cooper also observed that one of the fence posts had a spot of teal-colored paint transfer. *Id.* About an hour later, he was alerted that the vehicle involved in this incident might be at the Lonsdale Market. *Id.* When he arrived there, Petitioner was in custody. *Id.*

Officer Cooper spoke to the caller who had reported the hit and run, as well as to the owner of Manis Motors, and concluded that a Ford Ranger truck was missing from the car lot. *Id.* Officer Cooper noticed that the truck at the Lonsdale Market was a similar color to the paint transfer spot he had observed on a fence post at Manis Motors and confirmed via VIN number that the teal truck at the Lonsdale Market was the truck missing from Manis Motors. *Id.*

Also, in the evening of January 20, 2015, Petitioner walked to the house of Wilma Jones, Petitioner's friend and former romantic partner. *Id.* According to Ms. Jones' testimony, when Petitioner arrived, he had a bottle of liquor and seemed "drunk." *Id.* Ms. Jones "sent [Petitioner] away reminding him that he was not allowed to be there when he was intoxicated." *Id.*

Later that night, Ms. Jones heard what sounded like a truck in her driveway. *Id.* When she looked out the window, she saw a teal pickup truck driving up and down the street. *Id.* She could not identify the driver but observed Petitioner in the passenger seat. *Id.* Ms. Jones went outside to get a better look. *Id.* The driver of the truck, she noted, was tall and wearing his hair "shaved real close." *Id.* Ms. Jones observed as the driver parked

2

Case 3:20-cv-00132-TAV-DCP Document 10 Filed 09/22/20 Page 2 of 18 PageID #: 568

the truck at the Lonsdale Market, *id.* at *2, which was visible from the porch of her residence. *Id.* at *1. She saw Petitioner and the driver exit the truck. *Id.* at *2. The pair spoke briefly before the driver got into a car and drove away. *Id.*

Ms. Jones walked to the Lonsdale Market. *Id.* When she arrived, Petitioner asked her if she liked the truck. *Id.* He stated that it was "his" and that he was going to buy it with money that he would get from "disability." *Id.* Ms. Jones asked why the truck did not have a "drive-out tag," and Petitioner stated that "'maybe' it had been 'lost.'" *Id.* Ms. Jones saw Petitioner start the truck two (2) or three (3) times. *Id.* Petitioner tried to get Ms. Jones to ride in the truck with him, but she told Petitioner he should not be driving given his state of intoxication. *Id.*

Suspecting the truck had been stolen, Ms. Jones called the non-emergency police number. *Id.* She later testified that she had walked to the market and called police that night because she was concerned about Petitioner's welfare as he had just been released from jail and she did not want Petitioner to get in trouble. *Id.*

In the early morning hours of January 21, 2015, Brian Mason, another officer of the KPD, responded to a call about a suspicious and possibly stolen vehicle at the Lonsdale Market. *Id.* When he arrived, he saw a Ford truck that matched the description of a reported stolen vehicle. *Id.* Officer Mason spoke with Ms. Jones and Petitioner. *Id.* Ms. Jones told Officer Mason that she had seen Petitioner driving the truck and went "to the market to make sure [he] did not drive again." Whereas Petitioner stated that a friend of his had been driving the truck and parked it at the market before leaving on foot. *Id.*

3

Petitioner also stated "that he wanted to go get a beer with Ms. Jones at Merchant's, but she refused so he 'brought the truck back and parked it on the scene.'" *Id.* According to Officer Masons' testimony, Ms. Jones never indicated to him that she saw a third party driving the truck. *Id.* Officer Mason also spoke with the owner of Lonsdale Market, who informed Officer Mason that the surveillance cameras for the store were not working. *Id.*

According to the testimony of the authorized keeper of records for the Knox County Criminal Court Clerk's Office, Petitioner was arrested pursuant to a warrant on December 26, 2014, and had been released on bond on January 20, 2015 [Doc. 7-4 p. 21–22]. *Id.* Petitioner's bond was time-stamped at 13:52 [Doc. 7-2 p. 7], but the keeper of records did not know when Petitioner was released [Doc. 7-4 p. 21]. According to Michael Miller, "a professional bondsman in Knox County" who did not process Petitioner's bond but had many years of experience in that area, an inmate could be released as quickly as one (1) hour after a bond is time-stamped, although it generally took two (2) or three (3) hours and could take up to five (5) or six (6) hours [*Id.* at 25]. *Id.*

Based on this evidence, a "jury convicted [Petitioner] of theft of property valued at $1,000 or more but less than $10,000 and acquitted [him] of [a] vandalism charge." *Id.* at *3. Petitioner appealed his conviction by challenging the sufficiency of the evidence and his offense classification. *Id.* The Tennessee Court of Criminal Appeals ("TCCA") affirmed his convictions. *Id.* at *5. Petitioner then filed a petition for post-conviction relief alleging ineffective assistance of counsel and prosecutorial misconduct [Doc. 7-3 p. 4–20], which, after a hearing [Doc. 7-12], was denied [*Id.* at 29–34]. The TCCA affirmed the

4

judgment of the post-conviction court. *Houser v. State*, No. E2019-00210-CCA-R3-PC, 2020 WL 550204, at *5 (Tenn. Crim. App. Feb. 3, 2020).

Petitioner then filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 [Doc. 2] that is now before the Court. Respondent filed a response in opposition [Doc. 8] and the state court record [Doc. 7]. Petitioner has not filed a reply and his time for doing so has passed [Doc. 5 p. 1].

After reviewing the relevant filings, including the state court record, the Court finds that the record establishes that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), Petitioner's requests for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

I.     **STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court decided on the merits unless the state court's adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). This standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA,

is a purposefully demanding standard . . . 'because it was meant to be'" (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011))). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

Petitioner asserts that his counsel was ineffective for (1) failing to cross-examine Richard Williams regarding discrepancies in his testimony at the preliminary hearing and at trial, (2) failing to call character and/or alibi witnesses, and (3) failing to examine the crime scene, and Petitioner claims that the cumulative effect of these errors prejudiced his defense [Doc. 2 p. 19–26].

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both

6

> showings, it cannot be said that the conviction . . . resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

*Id.* A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

As to the first prong, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 697. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the

7

"doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 1. Cross Examination

Petitioner first asserts that counsel failed to competently cross examine Richard Williams regarding discrepancies in his testimony [Doc. 2 p. 9]. Petitioner refers to the fact that Mr. Williams testified at the preliminary hearing that Petitioner had been at Manis Motors two (2) weeks prior to January 20, 2015, but at trial he testified that Petitioner had come to the car lot on January 20, 2015, and that the teal Ford Ranger truck had been at the car lot for just five (5) or six (6) days on that date [Doc. 2 p. 9].

The TCCA held that Petitioner was not entitled to relief on this ground because the post-conviction court had found that Petitioner's counsel had cross examined Mr. Williams about the discrepancies in his testimony and, because Petitioner had failed to provide the trial transcript in the appellate record, the TCCA had to presume the post-conviction court's finding was correct. *Houser*, 2020 WL 550204, at *5 (citing *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993)).

Petitioner asserts that this finding is an improper application of *Strickland* because, his argument goes, no reasonable person could have found that it was possible for Petitioner to have looked at the truck on the day of or two (2) weeks before the theft had trial counsel properly impeach Mr. Williams as to the date Petitioner looked at the truck [Doc. 2 p. 21]. Respondent counters that Petitioner procedurally defaulted this claim because the TCCA did not reach the merits thereof due to Petitioner's failure to provide the trial transcript in

8

the appellate record. And Petitioner seems to suggest that any such default should be excused in light of the alleged ineffective assistance of his post-conviction counsel in failing to file the trial transcript in the appellate record [*Id.* at 38–39].

Federal habeas courts reviewing state-court convictions may not consider claims that a state court dismissed based clearly and expressly on a state procedural rule that provides an independent and adequate basis for the dismissal. *Coleman v. Thompson*, 501 U.S. 722, 729, 731–32 (1991). Such claims are procedurally defaulted. *Id.* A prisoner may, however, overcome this bar by showing cause to excuse the procedural default and actual prejudice as a result of the alleged error, or by demonstrating that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750.

An attorney's ineffective assistance in post-conviction proceedings generally does not establish "cause" to overcome procedural default. *Id.* at 755.[1] Where a habeas petitioner could raise a claim for trial counsel's ineffective assistance for the first time in a post-conviction petition, however, ineffective assistance of post-conviction counsel may be cause to excuse a procedural default. *Trevino v. Thaler*, 669 U.S. 413, 429 (2013); *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Wallace v. Sexton*, 570 F. App'x 443, 452–53

---

[1] Also, to the extent that Petitioner seeks to assert that the alleged ineffective assistance of his post-conviction counsel is an independent ground for relief under § 2254 [Doc. 2 p. 39], prisoners do not have a constitutional right to post-conviction counsel, and thus do not have a constitutional right to effective assistance of post-conviction counsel in state collateral proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, any such claim is not cognizable.

9

(6th Cir. 2014). This exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

However, as Respondent correctly points out, the Sixth Circuit has held that *Martinez* does not excuse a procedural default where a habeas petitioner presented an ineffective assistance of counsel claim to the trial court but failed to properly raise it on appeal. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (holding that habeas relief is not warranted for claims "raised and rejected on the merits by the initial postconviction court, [as] ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [the petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals").

Here, because Petitioner's default occurred on post-conviction appeal, Petitioner cannot rely on *Martinez* to establish cause to excuse default of this claim. Thus, the claim is defaulted, and he is not entitled to relief under § 2254 for this claim.

Moreover, even if Petitioner did not procedurally default this claim, he has not established that he is entitled to relief under § 2254 for this claim. Specifically, the trial transcript shows that Petitioner's counsel did point out the discrepancy in Mr. Williams's testimony at issue during his cross examination of this witness [Doc. 7-3 p. 29]. Also, substantial evidence in the record reflects that instead of further emphasizing this point in trial by re-calling Mr. Williams to testify again or putting more proof in the record of Mr. Williams's previous testimony, Petitioner's counsel instead chose to emphasize that Petitioner could not have looked at the truck on January 20, 2015, as Mr. Williams testified,

10

due to the time at which Petitioner was released from jail on that day as a matter of strategy [Doc. 7-3 p. 99–103; Doc. 7-4 p. 7–15, 42–43; Doc. 7-12 p. 45–48]. Such a choice is entitled to a presumption that counsel exercised reasonable professional judgment. *See Strickland*, 466 U.S. at 690–91 (holding that counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (holding that "strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation."). Thus, even if the claim were not defaulted, Petitioner is not entitled to § 2254 relief for this claim.

### 2. Character and Alibi Witnesses

Petitioner next alleges that his counsel was deficient for not calling character and/or alibi witnesses to strengthen his credibility and prove that he did not commit the crime [Doc. 2 p. 22–24]. Specifically, Petitioner argues that counsel should have spoken to store employees or other individuals in the store that may have seen another man driving the stolen vehicle [*Id.* at 23]. Petitioner claims "[t]he state appellate court really d[id]n't address the issue involving trial counsel's failure to present known character witnesses" [*Id.*]. Petitioner also argues that his counsel was deficient for failing to "conduct an adequate investigation" and asserts that the TCCA did not apply *Strickland* correctly to this

11

claim because counsel "conducted little, to no, investigation into these matters" and should have investigated further [*Id.* at 23].

Contrary to Petitioner's assertion, the TCCA did address this claim, finding that Petitioner had "failed to present any witness whose testimony he claims would have benefited his defense at trial," *id.* at *5, and "failed to present any evidence that counsel could have discovered with further investigation." *Id.* As a result, the TCCA held, Petitioner could not establish that he suffered actual prejudice as a result of counsel's conduct. *Id.* Petitioner fails to explain how the TCCA's finding that Petitioner did not establish the actual-prejudice prong of an ineffective-assistance-of-counsel claim resulted from an unreasonable application of federal law or was an unreasonable determination of the facts in light of the evidence presented. As such, Petitioner has not carried his burden to show he is entitled to § 2254 relief for this claim.

### 3. Crime Scene

Petitioner also alleges that counsel was insufficient for failing to physically investigate the crime scene for surveillance video, ATM machine video, or other evidence that would have established his innocence [Doc. 2 p. 24–26]. As set forth above, the TCCA found that Petitioner failed to set forth any evidence that further investigation by counsel could have discovered through further investigation and thus failed to establish that counsel's failure to do so had prejudiced him. *Id.* Again, Petitioner has set forth nothing from which the Court could determine that this was an unreasonable application of federal

12

law or an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to § 2254 relief for this claim.

### 4. Cumulative Error

Petitioner also asserts that the cumulative effect of all of his counsel's errors entitles him to habeas corpus relief under § 2254. However, "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). Moreover, even if a cumulative error claim were cognizable under § 2254, the Court has determined that none of Petitioner's claims entitles him to relief, and thus Petitioner could not recover for any such cumulative error claim. *Id.* Thus, Petitioner is not entitled to relief under § 2254 for this claim.

## B. Sufficiency of the Evidence

Petitioner next asserts that he is entitled to habeas corpus relief under § 2254 because the evidence was insufficient to support his conviction because the evidence shows that someone other than Petitioner drove and had possession of the truck [Doc. 2 p. 27–33]. Respondent asserts that Petitioner procedurally defaulted this claim because when he presented an argument regarding the sufficiency of the evidence to the TCCA, he did so under a different theory [Doc. 8 p. 19]. Specifically, in his direct appeal, Petitioner asserted that the evidence was insufficient to support his conviction because it showed that he intended to purchase the truck and did not show that he knew the truck was stolen or that he intended to deprive the owner of possession of the truck [Doc. 7-5 p. 12–13].

13

For a federal court to consider a claim on habeas review, a petitioner must first exhaust his state court remedies for that claim. 28 U.S.C. § 2254(b)(1). Exhaustion requires the petitioner to "fairly present" each federal claim to all levels of the state appellate system by presenting the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

The record establishes Petitioner did not present this claim (i.e., that the evidence was insufficient to support his conviction because it showed that someone else was driving and possessing the truck) to the TCCA. He therefore failed to exhaust his remedies in the state courts for his claim, and the claim is procedurally defaulted. Petitioner has presented no grounds for the Court to excuse his default.

Moreover, to the extent that Petitioner did properly exhaust his argument in his petition that the evidence was insufficient to show that he intended to deprive the owner of the truck of possession of the truck, he is not entitled to relief under § 2254 for that claim. The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for such claims. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000), *superseded on other grounds Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

14

doubt. *Jackson*, 443 U.S. at 319. In making this determination, the district court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the fact finder's verdict "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'" (quoting *Jackson*, 443 U.S. at 326)). The habeas court must also give deference the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). As such, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The TCCA held as follows regarding Petitioner's claim that the evidence was insufficient to support his conviction:

> A person commits theft of property if that person: (1) "knowingly obtains or exercises control over the property," (2) "with intent to deprive the owner"

15

> of the property, and (3) "without the owner's effective consent." T.C.A. § 39–14–103 (2014). In addition to these three elements, the fact-finder must also determine the classification of the theft, based on the value of the property stolen. At the time of this offense and at the time of the trial and sentencing in this case, theft of property valued at $1,000 or more but less than $10,000 was a Class D felony. T.C.A. § 39–14–105(3) (2014). Theft may also be inferred by the mere possession of recently stolen goods. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995); *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987).
>
> The evidence, viewed in the light most favorable to the State, shows that the Defendant visited Manis Motors car lot on January 20, 2017, [sic] and expressed an interest in purchasing a teal-green Ford Ranger truck, valued at $1,600 to $1,800. Later that night, the same Ford Ranger truck was taken, without permission, from Manis Motors and found in the Defendant's possession at nearby Lonsdale Market. While at the market, the Defendant told Ms. Jones that the truck was "his" and that he planned to buy it. The Defendant started the truck and invited Ms. Jones to "ride with him" to Merchant's. This evidence is sufficient for a jury to find that the Defendant knowingly exercised control over the truck with the intent to deprive Manis Motors of the truck and without the owner's permission.

*Houser*, 2017 WL 5054074, at *4.

As set forth above, Petitioner asserts that this was an unreasonable interpretation of the facts in light of the evidence presented at trial. The evidence, Petitioner argues, showed that someone else drove the stolen truck and that this person, rather than Petitioner, had possession of, and "'knowingly obtained or exercised control over the property with the intent to deprive the owner' of the property." The TCCA's opinion, Petitioner's argument goes, was therefore an unreasonable interpretation of *Jackson* [*Id.* at 33].

The Court does not agree. The evidence at trial, as summarized by the TCCA, *supra*, supported the TCCA's finding that there was sufficient evidence to convict Petitioner of theft under *Jackson*, because a reasonable jury could have found that Petitioner knowingly obtained or exercised control over the truck with the intent to deprive

the owner of the truck and without the owner's consent based on that evidence. Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### C. Prosecutorial Misconduct

Petitioner also seeks to assert a claim for prosecutorial misconduct based on the allegation that the prosecution knowingly presented false testimony from Mr. Williams at trial [Doc. 2 p. 34, 40]. However, Petitioner did not present any such claim to the TCCA [Doc. 7-5; Doc. 7-13], and thus the claim is procedurally defaulted. Moreover, while Petitioner seeks to rely on *Martinez* to excuse this default, as Respondent correctly points out, "*Martinez* does not apply to defaulted claims that are not claims of ineffective assistance of trial counsel." [Doc. 8 p. 20 (citing *Abdur-Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015))]. Petitioner has set forth no other reason for the Court to excuse this default. Thus, Petitioner is not entitled to relief under § 2254 for this claim.

## III. CONCLUSION

For the reasons set forth above, the petition for § 2254 relief will be **DENIED** and this action will be **DISMISSED**.

## IV. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismisses a claim on the

17

Case 3:20-cv-00132-TAV-DCP   Document 10   Filed 09/22/20   Page 17 of 18   PageID #: 583

merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his claims such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

18